CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 14 2006

JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **RUSSELL LEE EBERSOLE,** | ) | |
| | ) | |
| **Petitioner,** | ) | **Civil Action No. 7:06cv00455** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **By: Samuel G. Wilson** |
| **Respondent.** | ) | **United States District Judge** |

This is a motion pursuant to 28 U.S.C. § 2255 by Russell Lee Ebersole challenging the validity of his guilty plea and sentence for willfully shipping explosives through an air carrier in contravention of Department of Transportation regulations, in violation of 49 U.S.C. § 46312, and corruptly persuading another person to destroy physical evidence so that it could not be used in an official proceeding, in violation of 18 U.S.C. § 1512(b)(2)(B). Essentially, Ebersole claims that his guilty plea was not voluntary because the United States failed to disclose exculpatory evidence which hampered his defense in violation of Brady v. Maryland, 373 U.S. 83 (1963). The United States has moved to dismiss because Ebersole's motion is untimely and because he waived his right to collaterally attack his plea and sentence. Ebersole counters that his motion is timely because he filed it within one year of the date he discovered the Brady violation. The court concludes that Ebersole voluntarily waived his right to mount this collateral attack and that it also is untimely.

## I.

Ebersole was the president and director of a business called Detector Dogs Against Drugs and Explosives, Inc. ("Detector Dogs"), a privately held Maryland corporation. The corporation,

which conducted its business in Hagerstown, Maryland, and in Frederick County, Virginia, trained dogs and their handlers to find drugs and explosives and then contracted the services of its canine teams. It also sold Detector Dogs dealerships to individuals and businesses in other states. Following the September 11, 2001, terrorist attacks federal agencies urgently sought the services of qualified explosive ordnance detection canine teams for the protection of their employees and the public. In an effort to persuade those agencies to retain Detector Dogs' services, Ebersole made a series of misrepresentations concerning his teams' training and capabilities. Based on those misrepresentations various agencies contracted for his services and paid him more than $708,000. Eventually, the government discovered the fraud; it terminated Detector Dogs' services, and Ebersole was indicted and convicted in the Eastern District of Virginia on 25 counts of wire fraud in violation of 18 U.S.C. § 1343 and two counts of presenting false claims to the government in violation of 18 U.S.C. § 287. See United States v. Ebersole, 411 F.3d 517 (2005).

The conduct that led the government to prosecute Ebersole in this district was quite distinct from the conduct that led the government to prosecute him in the Eastern District. On March 12, 2002, in violation of Department of Transportation regulations, Ebersole caused an employee to ship 635 grams of explosives from the Western District of Virginia by next day air to a Detector Dogs dealership in Portland, Oregon. He told the employee to mark the package as "kitchen supplies" or "kitchen utensils" in order to disguise its contents and to ship it UPS next day air rather than Federal Express because Federal Express used bomb sniffing dogs. This was not the only occasion Ebersole violated Department of Transportation regulations governing the shipment of explosives.

In the course of an ATF investigation, to conceal this and other violations, Ebersole called the operator of a Detector Dogs dealership in Seattle, Washington, on April 23, 2002, and told her to dispose of explosives he had improperly shipped to her by overnight air carrier. Ebersole instructed her to dump them in a park, the bushes, a stream, or the ocean and to tell the ATF that he had personally delivered the explosives to her and that she had disposed of them not long after she received them because they were contaminated.

A federal grand jury in the Western District of Virginia returned a six count indictment against Ebersole arising out of his handling of explosives and his obstruction of justice in the course of the government's investigation. Ebersole entered into a plea agreement with the government in which he agreed to plead guilty to Counts One and Four and to waive his right to appeal and to collaterally attack his plea and sentence. Count One charged him with willfully shipping explosives through an air carrier in violation of 49 U.S.C. § 46312, arising out of the March 12, 2002, shipment to Portland, Oregon, and Count Four charged him with corruptly persuading another person to destroy physical evidence so that it could not be used in an official proceeding in violation of 18 U.S.C. § 1512(b)(2)(B), arising out of his April 23, 2002, instructions to the Detector Dogs distributor in Seattle, Washington.

In exchange for Ebersole's plea, the government agreed to dismiss the remaining counts of the indictment, to recommend acceptance of responsibility if he continued to accept it, and not to seek an upward departure if he fulfilled his obligations under the plea agreement and accepted responsibility. The agreement also acknowledged, as of the date he signed it—July 21, 2003, that he was fully satisfied with the advice his attorney had given him. He agreed that he would "make known to the court no later than at the time of sentencing any dissatisfaction or

complaint" he had with his attorney's representation and waived any ineffective assistance claim known if not raised at the time of sentencing.

The court conducted a thorough plea colloquy, during which Ebersole affirmed under oath, among other things, that he received a copy of the indictment, that he had discussed the charges and his case with his counsel, that he was fully satisfied with his counsel's representation, that he had read the entire plea agreement before he signed it, that he understood everything in the agreement, that no one had made any other or different promise or assurance to him of any kind in an effort to induce him to enter the plea, that no one had forced him to enter the plea, that he understood the maximum possible penalties for each offense, that he understood the court was not bound to follow the sentencing recommendations in his plea agreement, that he understood the court would not permit him to withdraw his plea if the sentence was more severe than he expected, that he was waiving his right to appeal and his right to collaterally attack his plea and sentence, and that he was pleading guilty because he was in fact guilty. The court then heard a summary of the evidence against Ebersole concerning the two offenses and asked him if he agreed with the summary, and he responded : "[i]n general, it's correct." He then pled guilty to Counts One and Four, and the court found that he was fully competent and capable of entering an informed plea and that his plea was a knowing and voluntary plea supported by an independent basis in fact. The court accepted his guilty plea and ordered a presentence report.

In recounting the facts to the probation officer who prepared his presentence report, Ebersole denied his own personal involvement, essentially characterizing his responsibility as the responsibility of the president of the company for the acts of his subordinates. Consequently, the government objected to Ebersole receiving acceptance of responsibility. At sentencing Ebersole

persisted with that characterization, a characterization the court found to be a mis-characterization, and the court found that Ebersole had not accepted responsibility. In response, Ebersole sought to withdraw his plea. The court found that, under the circumstances, the plea agreement did not prevent the government from opposing Ebersole receiving acceptance of responsibility. The court denied his motion to withdraw his plea, and sentenced him accordingly.

## II.

The Supreme Court has never applied Brady to a guilty plea, and the Court of Appeals for the Fourth Circuit has not squarely addressed it in this context either. Ordinarily, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollet v. Henderson, 411 U.S. 258, 267 (1973). Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. However, the Fourth Circuit's sister circuits have concluded that a Brady violation can render a guilty plea involuntary. In those circuits, non-disclosed exculpatory information is "material" for Brady purposes if it "would have been controlling in the decision whether to plead." White v. United States, 858 F.2d 416, 422 (8th Cir. 1988). Applying that test here, without deciding that Brady should apply to a guilty plea that is otherwise voluntary, the court has no hesitancy in concluding that the evidence the government allegedly failed to disclose in the Eastern District of Virginia was not material to Ebersole's defense in the Western District. Accordingly, the court concludes that Ebersole's plea was voluntary, that his current claims are within the scope of his express waiver of his right to mount a collateral attack, and that his current challenge also is untimely.

**A.**

Ebersole has not identified a Brady violation in the Western District of Virginia but instead complains about a violation in the Eastern District Virginia he characterizes as a Brady violation in connection with his prosecution and conviction in that district. According to his argument, a government agent lied about the results of the government's proficiency testing of Ebersole's ordinance detection teams. Based on that lie, he argues, the government obtained a search warrant, conducted a search, gathered evidence, prosecuted and convicted him in the Eastern District. This, he argues, ultimately led to his prosecution and guilty plea in the Western District. However, the court finds Ebersole's argument to be exceptionally attenuated and flawed at several levels, including its failure to identify exculpatory evidence that was material in the context of the distinctly different case against Ebersole in the Western District. Ebersole identified nothing the government allegedly withheld in the Eastern District that "would have been controlling in the decision whether to plead" in the Western District. See White v. United States, 858 F.2d at 424.[1] It follows that Ebersole's premise that his plea in this district was involuntary because the government withheld material evidence, is meritless, and the court rejects it on that ground. The court also rejects the claim because Ebersole voluntarily and knowingly waived his right to collaterally attack his plea and sentence. United States v.

---

[1] Ebersole also raises a convoluted effective assistance claim intertwined with his Brady claim. Under the two-prong standard articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) to establish ineffective assistance of counsel in connection with a guilty plea, the petitioner must show not only that his attorney's performance was inadequate, but also that he was prejudiced by that performance— that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Here, Ebersole cannot show that his counsel's advice in connection with his plea of guilty in the Western District was either inadequate or prejudicial.

Lemaster, 403 F.3d 216, 220-23 (4th Cir. 2005) (voluntary collateral attack waivers are binding).

**B.**

Ebersole countered the government's contention that his motion is untimely under § 2255's one-year statue of limitations by arguing that he had one year from the discovery of the Brady violation. However because there is no Brady violation in connection with his plea in the Western District, to challenge that conviction pursuant to 28 U.S.C. § 2255, Ebersole had one year from the date his judgment of conviction became final. The court entered judgment on November 28, 2003, and his conviction became final 10 days later when his time to appeal ran. It follows that because he did not file his current § 2255 motion until July 25, 2006, it is more than a year and a half late and is subject to dismissal on that ground as well.

**III.**

The court accepted Ebersole's plea only after a thorough plea colloquy and Ebersole's admission in open court under oath that he was pleading guilty because he was in fact guilty. The court found on the record that Ebersole's plea was a knowing and voluntary plea supported by an independent basis in fact, and that finding was no mere formalism. Nothing he has since suggested or offered dispels it. Accordingly, the court rejects Ebersole's challenge.

**ENTER**: This December 14, 2006.

UNITED STATES DISTRICT COURT



Case 7:06-cv-00455-SGW-mfu Document 27 Filed 12/14/06 Page 7 of 7 Pageid#: 260